STATE, Plaintiff-Respondent, v. DWYER,
Defendant-Appellant.

Court of Appeals

*No. 78–807.* *Argued June 22, 1979.—Decided August 6, 1979.*
(Also reported in 283 N.W.2d 448.)

For the appellant, there was a brief and oral argument by *Steven O'Meara, O'Meara & Eckert of West Bend.*

For the respondent, there was a brief by *Bronson C. La Follette,* attorney general and *Kirbie Knutson,* assistant attorney general, with oral argument by *Kirbie Knutson.*

Before Voss, P.J., Brown, J., and Bode, J.

BODE, J.   This case is before the court to review an order dated November 3, 1978 permanently enjoining the defendant, Francis Dwyer, from conducting or contracting for dredging operations on state lands in the upper reaches of the east branch of the Milwaukee River located generally in Sections 17 and 20 of the Town of Mitchell, Sheboygan County, Wisconsin. A full hearing on the matter was held on October 25, 1978 following the issuance on October 24, 1978 of a temporary injunction and an order to show cause why Dwyer should not be permanently enjoined from continuing a dredging operation.

At the hearing, it was determined that Dwyer owns property in Sections 17 and 20 of the Town of Mitchell which abuts the Kettle Moraine State Forest. A stream, which forms the upper reaches of the east branch of the Milwaukee River, is located in the Southeast Quarter of the Southwest Quarter, S17–T14N–R20E, and travels in a generally southerly direction over the Northeast Quarter of the Northwest Quarter, S20–T14N–R20E, where

it turns and travels in a southwesterly direction as it crosses into the state forest.

Testimony indicated that the stream is overgrown with vegetation and silted for a distance of about one-half mile from where it crosses into the state forest until it passes under the Butler Lake Road. It was undisputed that this condition hampered the drainage of the stream and Dwyer's farmland and that, at the time of the hearing, 129.9 acres of Dwyer's land were too wet to permit the operation of farm equipment.

In 1974, Dwyer sought permission from the State Department of Natural Resources (DNR) to allow him to dredge the stream in this area to form a drainage ditch approximately forty feet wide to improve the drainage of his land. This request was never officially granted or denied.

Walter Adams, the Superintendent of the Kettle Moraine State Forest, Northern Unit, testified that on or about October 19, 1978, he observed a dredging operation on the upper reaches of the stream which he learned was being done at the direction of Dwyer. Dwyer testified that to improve the drainage of his land he contracted to have the stream dredged of vegetation and bottom silt to a width of 13′8″ from the bridge to where it entered the state forest. This figure corresponds to the width of the stream at the Butler Lake Road bridge. At the time of the hearing, approximately 2,200 feet had been dredged with all materials being left along the stream bank. These materials included clay and sand from the stream bed as well as silt and bottom sediments.

The court found sec. 88.90(3), Stats., which permits a person to go upon someone else's land to remove natural obstructions in a watercourse without being liable for trespass, does not waive the requirement of sec. 30.20(1)

(b), Stats., that he obtain a permit from the DNR. It then issued an order granting the permanent injunction.

Dwyer appeals from this order. He argues primarily that sec. 30.20, Stats., gives the DNR jurisdiction only over navigable streams and since no determination on navigability has been made in this case, the permit requirement cannot be said to apply. We disagree.

Section 30.20(1)(b), Stats., reads, "No person shall remove any material from the bed of any lake or stream not mentioned in par. (a) without first obtaining a permit from the department under sub. (2)(c)." Paragraph (a) refers only to navigable lakes and outlying waters of the state. Therefore, by the plain language of the statute, paragraph (b) must cover non-navigable lakes and navigable and non-navigable streams.

The defendant contends the titles to Chapter 30 and sec. 30.20, Stats., include only navigable waters and, therefore, the permit requirement applies only to navigable lakes and streams. We cannot accept this contention. Such titles are not a part of the statutes. Sec. 990.-001(6), Stats. Furthermore, while a title may be used to help resolve an existing doubt about a statute's meaning, it may not be used to create the doubt. *Wisconsin Valley Improvement Co. v. Public Service Commission,* 9 Wis.2d 606, 618, 101 N.W.2d 798, 804 (1960). Because the clear language of sec. 30.20(1)(b), Stats., requires a permit for dredging non-navigable streams, there is no need to consider the titles.

Thus, it becomes unimportant whether the stream in question is or is not navigable. The question narrows down to whether sec. 88.90(3), Stats., supersedes sec. 30.-20(1)(b), Stats., and allows the removal of natural obstructions from a waterway without a permit.

Section 88.90(3), Stats., states:

Whenever any natural watercourse becomes obstructed through natural causes, the owner or occupant of any lands damaged by the effect which the obstruction has upon the flow of the water may go upon the land where the obstruction is located and remove it at his own expense. Such person is not guilty of trespass for entry upon the land but is liable for damage caused to crops or structures. The rights and privileges conferred by this subsection also extend to the agents or employes of the person causing the obstruction to be removed.

This statute certainly fits the situation in which Dwyer finds himself. Nevertheless, while the statute protects him from being charged with trespass for going on another's land to remove an obstruction from a waterway, it does not waive other applicable statutory requirements. Section 30.20, Stats., is such a requirement.

The statement of policy and purpose for the DNR with regard to water resources is found in sec. 144.025(1), Stats. In part it states: "The department of natural resources shall serve as the central unit of state government to protect, maintain and improve the quality and management of the waters of the state, ground and surface, public and private." In order to comply with this purpose in the area of dredging lakes and streams, the DNR must have some means to regulate and control such operations. Section 30.20, Stats., provides the needed control.

Section 88.90(3), Stats., recognizes the right of a private landowner to protect his property from damage, yet sec. 30.20, Stats., recognizes this may not be done at the expense of the public interest in the waters involved. The statutes are not inconsistent when read together. They simply protect different interests. Consequently, before proceeding under sec. 88.90(3), Stats., to remove natural obstructions from waterways which are causing damage to one's land, a person must first obtain the nec-

essary permit from the DNR under sec. 30.20, Stats. In this way, both the interests of the individual landowner and the public are protected.

We do not imply the defendant's dredging of this particular stream is contrary to the public interest. It is not our place to make such a determination initially. However, were we to construe sec. 88.90(3), Stats., as being totally independent of sec. 30.20, Stats., and free of the permit requirement, it would allow dredging to occur at the unfettered discretion of individual property owners. While such discretion might be exercised wisely in most instances, the serious foreseeable harm from possible abuses militate against our adopting that position. The DNR must have some means to oversee necessary, and prohibit harmful, dredging operations.

This does not mean Dwyer cannot under any circumstances dredge the stream. It simply means he must seek the proper permit from the DNR. If the permit is denied, his remedy is then to seek administrative review.

*By the Court.*—Order affirmed.