Wisconsin Valley Improvement Company, Respondent, v. Public Service Commission, Appellant.*

*February 5—March 8, 1960.*

* Motion for rehearing denied, without costs, on May 3, 1960.

608

For the appellant the cause was argued by *William E. Torkelson,* chief counsel for the Public Service Commission, with whom on the brief were *John W. Reynolds,* attorney general, and *Roy G. Tulane,* assistant attorney general.

For the respondent there was a brief by *Smith, Puchner, Tinkham & Smith* of Wausau, and oral argument by *R. E. Puchner* and *Richard P. Tinkham.*

CURRIE, J.  The issue presented by this appeal is one of statutory interpretation.

By ch. 335, Laws of 1907, the legislature created a comprehensive act which authorized the petitioner Wisconsin Valley Improvement Company to construct, acquire, and maintain a system of water reservoirs to be created by means of dams on the tributaries of the Wisconsin river north of the south line of township thirty-four (34) north. Various amendments to such act were adopted in succeeding years. Then in 1939 the legislature enacted ch. 497, Laws of 1939, to amend, revise, and consolidate the original act as amended. Under both the original and revised acts no new dam could be constructed by the petitioner without first securing a permit from the Public Service Commission, formerly the Railroad Commission.

The two sections of such revised act of 1939, the interpretation of which is decisive on the question of whether the Public Service Commission properly dismissed petitioner's application for a permit to erect a dam, are secs. 2 (2) and 4 (3). These two subsections read as follows:

"2 (2) All franchises, other than corporate franchises, and all riparian rights and rights of flowage, either perfected or inchoate, acquired by purchase or grant, by any person or by any corporation organized to improve the navigation for any purpose, of either of said Wisconsin or Tomahawk river, or any of their tributaries, not above excepted, shall be and are made assignable to the company, and shall be of the same force and effect in the possession and ownership of such assignee to accomplish the purposes of this act as the same may be before assignment to accomplish their original purpose. But this act shall not amend or repeal chapter 532, of the laws of 1887, nor chapter 252 of the laws of 1889, nor chapter 483, of the laws of 1905, nor chapter 26, of the laws of 1903, nor any amendment thereof, nor abridge the rights, powers, or duties conferred by said acts, nor *authorize the taking by the company by the power of eminent domain of* any property used under or pursuant to said acts, nor *any other property devoted to public uses;* . . . " (Italics supplied.)

"4 (3) In case any lands of the state of Wisconsin are required to be taken or overflowed for any of the purposes of this act, the commission shall appraise, determine, and fix the damage caused by such taking or overflow, and the amount thereof shall be paid into the state treasury by the company."

The 205 acres of state-owned lands, which would be overflowed if petitioner's application for a permit to build the dam were granted, are now devoted to conservation purposes as a deeryard and wild-game habitat. Therefore, they are "devoted to public uses" within the meaning of sec. 2 (2) of the act. This is apparently conceded by the petitioner. However, petitioner contends that the method of

determining and fixing the damages for any state lands required to be taken or overflowed, as a result of the granting of a permit to erect a dam, is not a taking by "eminent domain." We are unable to agree with such contention.

1 Nichols, Eminent Domain (3d ed.), p. 2, sec. 1.11, defines eminent domain as follows:

"Eminent domain is the power of the sovereign to take property for public use without the owner's consent."

In Jahr, Eminent Domain, p. 5, sec. 2, it is said:

"Eminent domain always involves a 'taking' of property and whenever there is a taking, eminent domain comes into play."

Another definition is that stated in *MacVeagh v. Multnomah County* (1928), 126 Or. 417, 431, 270 Pac. 502, 507, in these words:

"Eminent domain is the power inherent in a sovereign state of taking or of authorizing the taking of any property within its jurisdiction for a public use or benefit."

As pointed out in *Lamasco Realty Co. v. Milwaukee* (1943), 242 Wis. 357, 374, 8 N. W. (2d) 372, 8 N. W. (2d) 865, the power of eminent domain is the only one of the sovereign powers of the state which may be delegated by the legislature to anyone other than officers and agents of the state, but when so delegated such power can be exercised only for the acquisition of property for a public use. In the instant situation the legislature has delegated to the petitioner the power to acquire lands for flowage and other purposes in connection with the erection of dams to establish the reservoirs, which reservoirs the legislature has declared serve a public purpose. Under any interpretation of sec. 4 (3) of the act at least some state-owned lands can be acquired for such purpose. Where the state is unwilling to

sell such lands, or grant flowage rights with respect thereto, to the petitioner, the act contemplates that the petitioner may take the same, by following the procedural steps of the act, against the wishes of the state. This clearly constitutes a taking by eminent domain.

The petitioner argues that there is no taking without the consent of the state, so as to constitute a taking by eminent domain, because the very passage of the act constitutes a consent to the taking, and cites *Black River Improvement Co. v. La Crosse B. & T. Co.* (1882), 54 Wis. 659, 11 N. W. 443, and *Marion v. Southern Wisconsin Power Co.* (1926), 189 Wis. 499, 208 N. W. 592. Both these cases dealt with acts of the legislature, each of which authorized the erection of a dam in a specifically described location. In the first case, it was held that, because the dam could not be built in such location without taking certain land owned by the state, the state must be deemed to have consented that its land be taken without compensation. In the second case, the dam could not be erected without overflowing certain highways. The court stated that it had no quarrel with the principle of the *Black River Improvement Co. Case* but held it was not applicable, and that compensation would have to be paid to the towns for injury to these roads.

We fail to see that the holdings of these two cited cases are germane to the point here under consideration. In every case where a legislature empowers a private corporation to take state-owned lands for a public purpose without indicating any particular lands, such taking constitutes a taking by eminent domain. It would be a fiction to hold that, in a situation such as the instant one, the granting of such general power to take state-owned lands is a consent to take particular lands that the state does not presently wish to sell. To follow the argument advanced by the petitioner to its logical conclusion there never could be a taking of state-owned land by eminent domain even though the legislature

might specially confer such power by an act which described the power granted as one of "eminent domain."

By our determination, that the taking of state-owned land under the procedure outlined in sec. 4 (3) of the act is a taking by eminent domain, the question arises as to whether the provisions of secs. 2 (2) and 4 (3) are not in direct conflict with each other. The Public Service Commission held that they were not because not all state lands are prohibited by the act to be taken by eminent domain but only those devoted to public uses. The state might own vacant land which is not being put to any public use. Such land could be taken by petitioner under the provisions of sec. 4 (3). We deem such interpretation of these two subsections by the commission is sound and in accord with one of the cardinal rules of statutory construction. Such rule is that an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the act. *Brunette v. Bierke* (1955), 271 Wis. 190, 196, 72 N. W. (2d) 702; *State ex rel. McManman v. Thomas* (1912), 150 Wis. 190, 196, 136 N. W. 623; and 50 Am. Jur., Statutes, p. 367, sec. 363.

That such construction placed upon these two subsections by the commission is a reasonable one is demonstrated by the absurd result which would flow from an interpretation that would construe sec. 2 (2) of the act as having no application to any state-owned lands. Under the latter interpretation no lands owned by a county, town, village, or city, or by any private corporation, that were devoted to a public use, could be taken by the petitioner by eminent domain. On the other hand, state-owned lands devoted to a public use could be taken by petitioner by following the procedure outlined in sec. 4 (3). We cannot envision the legislature's having intended such an unreasonable result. It is further a well-recognized rule of statutory construction that absurd results are to be avoided if possible. *State v.*

*Surma* (1953), 263 Wis. 388, 394, 57 N. W. (2d) 370, and 50 Am. Jur., Statutes, p. 385, sec. 377.

The pertinent provisions of sec. 2 (2) of the act (ch. 497, Laws of 1939), appeared in the identical language of sec. 1 of the original act (ch. 335, Laws of 1907); and likewise, present sec. 4 (3) of the act was also contained in sec. 3 of the original act in substantially the same language, except that the commission was there referred to as the Railroad Commission. In an opinion issued January 11, 1935, appearing in 24 Op. Atty. Gen. 8, the question was whether land held by the Conservation Department might be taken by the Wisconsin Valley Improvement Company by virtue of ch. 335, Laws of 1907, for the purpose of establishing a reservoir in Oneida county. The land in question was held by the Conservation Department for the purpose of establishing a wildlife refuge, spawning ground for fish, and sanctuaries for fur-bearing animals. The question was whether these lands could be taken by Wisconsin Valley Improvement Company "under the power of eminent domain given the company by ch. 335, Laws of 1907." The opinion then states (p. 8):

"This question is answered in the negative.

"The act specifically provides that it does not authorize this company to take by the power of eminent domain any property devoted to public uses. There is an exception as to certain dams, but we are informed that the exception mentioned in the act does not cover the area which will be affected by the proposed reservoir.

"We understand that the lands held by the conservation department are actually being used for the purposes mentioned and there can be no question as to their being 'devoted to public uses' within the meaning of the act."

Four years after the rendering of such opinion by the attorney general the legislature amended and revised the 1907 act as subsequently amended by adopting ch. 497, Laws

of 1939, but, as we have previously observed, made no change in the two provisions before us for interpretation on this appeal. Under such circumstances the opinion of the attorney general is entitled to considerable weight. This court in the recent case of *State ex rel. West Allis v. Dieringer* (1957), 275 Wis. 208, 219, 220, 81 N. W. (2d) 533, stated:

"In 2 Sutherland, Statutory Construction (3d ed.), pp. 516, 517, sec. 5105, the author points out that: ' . . . interpretations by the attorney general and the legal department of a state will have important bearing upon statutory meaning, since the attorney general and his office are required by law to issue opinions for the assistance of the various departments of the government administering the law.' . . . In sec. 5109 of the same work, pp. 523, 524, it is said, 'Where a statute has received a contemporaneous and practical interpretation and the statute as interpreted is re-enacted, the practical interpretation is accorded greater weight than it ordinarily receives, and is regarded as presumptively the correct interpretation of the law. The rule here is based upon the theory that the legislature is acquainted with the contemporaneous interpretation of a statute, especially when made by an administrative body or executive officers charged with the duty of administering or enforcing the law, and therefore impliedly adopts the interpretation upon re-enactment.' "

The brief in behalf of the petitioner points out that the clause in sec. 2 (2) of the act, which prohibits it from taking by the power of eminent domain of any "other property devoted to public uses," is preceded by an enumeration of four other special legislative acts granting to others the rights to build certain dams and prohibiting the petitioner from taking by eminent domain "of any property used under or pursuant to said acts." From this it is urged that the words "any other property devoted to public uses" were intended only to apply to property already devoted to public-

utility purposes and not public uses in general. In further support of such contention, it is pointed out that the title to sec. 1 of ch. 335, Laws of 1907, was "Location of reservoirs; acquisition and protection of other franchises; Eagle river to be kept navigable; tolls."

Titles to sections of a statute are not part of the statute. Sec. 990.001 (6), Stats. However, such titles may be resorted to in order to resolve a doubt as to statutory meaning. *Federal Rubber Co. v. Industrial Comm.* (1924), 185 Wis. 299, 301, 201 N. W. 261, 40 A. L. R. 491. However, the converse of the latter rule is also true that titles should not be resorted to in order to create a doubt where none would otherwise exist. The legislature did not qualify the words "other public uses" by use of the word "similar" or other synonym. We do not consider that the words used were of such doubtful or ambiguous meaning that resort should be had to the title of the section of the 1907 act in which they appeared in order to interpret them. Furthermore, when the legislature in 1939 re-enacted the identical clause without change after it had been interpreted by the attorney general as applying to state lands administered by the Conservation Department for a public use, it is persuasive evidence that the legislature approved of such interpretation.

The petitioner advances a further argument grounded upon public policy. It points out that the statutory interpretation adopted by the Public Service Commission would prevent the petitioner from ever obtaining a permit, if any parcel of state land, however small, devoted to a public use were located in the basin of the reservoir to be created by the dam. On the other hand, petitioner contends that under its interpretation in such a situation the commission, after petitioner files its application to construct a dam, would weigh the competing public interests and decide the issue on the basis of which result would best serve the public good.

The statute upon which petitioner relies as conferring the power upon the commission to weigh such competing interests is sec. 31.06 (3), the pertinent provisions of which read as follows:

"At such hearing or any adjournment thereof the commission shall consider the application, and shall take evidence offered by the applicant and other persons in support thereof or in opposition thereto, may require the amendment of the application, and if it shall appear that the construction, operation, or maintenance of the proposed dam *will not materially* obstruct existing navigation or *violate other public rights and will not endanger* life, health, or *property,* the commission shall so find and a permit is hereby granted to the applicant. The enjoyment of natural scenic beauty is declared to be a public right to be considered along with other public rights and the economic need of electric power for the full development of agricultural and industrial activity and other useful purposes in the area to be served." (Italics supplied.)

The fatal vulnerability of the petitioner's argument lies in the construction which this court has placed upon the wording of the first sentence of the statute above quoted in *New Lisbon v. Harebo* (1937), 224 Wis. 66, 271 N. W. 659. It was therein determined that harm to the property to be normally overflowed as a result of erection of the proposed dam is not an element to be considered by the commission in passing upon the application for a permit.

*By the Court.*—Judgment reversed, and cause remanded with directions to affirm the order of the Public Service Commission.