# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP913-CR & 2017AP914-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |        Plaintiff-Appellant, |
| |     v. |
| | Autumn Marie Love Lopez, |
| |        Defendant-Respondent-Petitioner. |
| | ------------------------------------------------- |
| | State of Wisconsin, |
| |        Plaintiff-Appellant, |
| |     v. |
| | Amy J. Rodriguez, |
| |        Defendant-Respondent. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 385 Wis. 2d 482,922 N.W.2d 855
PDC No:2019 WI App 2 - Published

| | |
|---|---|
| OPINION FILED: | November 27, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 9, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Green |
|   JUDGE: | James R. Beer |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | R.G. BRADLEY, J. concurs, joined by KELLY, J. (except for footnote 2 and statement in ¶34 that she does not join the lead opinion). (opinion filed) |
| | KELLY, J. concurs (except for ¶25-31). (opinion filed) |
|   DISSENTED: | |
|   NOT PARTICIPATING: | A.W. BRADLEY, J. dissents, joined by DALLET, J. (opinion filed) |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed by *Kelsey Loshaw* and *Susan E. Alesia*, assistant state public defenders. There was an oral argument by *Kelsey Loshaw*.

For the plaintiff-appellant, there was a brief filed by *Lisa E.F. Kumfer*, assistant attorney general, with whom on the brief was *Joshua L. Kaul*, attorney general. There an oral argument by *Lisa E.F. Kumfer*.

**2019 WI 101**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

Nos. 2017AP913-CR & 2017AP914-CR
(L.C. Nos. 2017CF39 & 2017CF40)

STATE OF WISCONSIN    :    IN SUPREME COURT

**State of Wisconsin,**

    **Plaintiff-Appellant,**

  **v.**

**Autumn Marie Love Lopez,**

    **Defendant-Respondent-Petitioner.**

**State of Wisconsin,**

    **Plaintiff-Appellant,**

  **v.**

**Amy J. Rodriguez,**

    **Defendant-Respondent.**

**FILED**

**NOV 27, 2019**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of a published decision of the court of appeals in two consolidated cases, State v. Lopez and State v. Rodriguez, 2019 WI App 2, 385 Wis. 2d 482, 922 N.W.2d 855, reversing the Green County circuit

court's order.[1] The circuit court order dismissed without prejudice the criminal complaints against Autumn Marie Love Lopez ("Lopez") and Amy J. Rodriguez ("Rodriguez"), which charged them with a single count of retail theft of items valued at more than $500 and less than $5,000, as parties to a crime, contrary to Wis. Stat. §§ 943.50(1m)(c) and (4)(bf), and 939.05 (2015-16).[2] The circuit court concluded that the State may not charge multiple acts of misdemeanor retail theft as a single felony. The court of appeals reversed and concluded that the State may charge multiple acts of retail theft as one continuous offense pursuant to Wis. Stat. § 971.36(3)(a). We affirm the court of appeals.

¶2 Pursuant to Wis. Stat. § 971.36(3), "[i]n any case of theft involving more than one theft, all thefts may be prosecuted as a single crime" provided certain criteria are satisfied. This court must decide whether the statutory term "theft" includes the statutory charge of retail theft. Lopez argues that it does not. She argues that "theft" includes only the five modes of theft described in Wis. Stat. § 943.20, not retail theft. The State argues that "theft" means any type of theft, including retail theft.

¶3 We conclude that "theft" under Wis. Stat. § 971.36 includes retail theft under Wis. Stat. § 943.50. We therefore

---

[1] The Honorable James R. Beer presided.

[2] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

2

conclude that the State has authority to charge multiple retail thefts under § 943.50 as one continuous offense pursuant to § 971.36(3). Thus, we affirm the court of appeals.[3]

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶4 On February 16, 2017, the State filed criminal complaints against Lopez and Rodriguez. The complaints allege that the two women committed a series of retail thefts from Wal-Mart in Monroe, Wisconsin. Specifically, the complaints allege that between January 10 and January 25, 2017, Lopez and Rodriguez together committed seven retail thefts. Lopez was an employee at Wal-Mart. The State alleges that Lopez pretended to assist Rodriguez at a self-check-out register. Lopez allegedly pretended to scan merchandise for Rodriguez, but in reality she either did not scan it or voided the scan. Rodriguez would then exit Wal-Mart with her stolen merchandise. The seven retail thefts ranged in individual value from $126.33 to $313.95. The total value of all the stolen merchandise was $1,452.12.

¶5 The State could have charged Lopez and Rodriguez each with seven separate class A misdemeanor retail thefts, contrary to Wis. Stat. § 943.50(1m)(c) and (4)(a).[4] Instead, pursuant to

---

[3] Justice Daniel Kelly joins this opinion except paragraphs 25 through 31. Curiously, while Justice Rebecca Grassl Bradley joins our mandate and seemingly agrees with at least a portion of the analysis, she nonetheless does not join any part of this opinion.

[4] The statute provides, in pertinent part, as follows:

943.50 Retail theft; theft of services. . . .

(continued)

Wis. Stat. §§ 971.36(3)(a)[5] and 943.50(4)(bf),[6] the State charged Lopez and Rodriguez with, as parties to the crime, a single class I felony count of retail theft of items valued at more than $500 and less then $5,000.  Lopez and Rodriguez each

---

(1m)  A person may be penalized as provided in sub. (4) if he or she does any of the following without the merchant's consent and with intent to deprive the merchant permanently of possession or the full purchase price of the merchandise or property:

. . .

(c) Intentionally transfers merchandise held for resale by a merchant or property of a merchant.

. . .

(4)  Whoever violates this section is guilty of:

(a)  . . . a Class A misdemeanor, if the value of the merchandise does not exceed $500.

Wis. Stat. § 943.50(1m)(c) and (4)(a).

[5] The statute, in pertinent, part provides:

971.36  Theft; pleading and evidence; subsequent prosecutions. . . .

(3)  In any case of theft involving more than one theft, all thefts may be prosecuted as a single crime if:

(a)  The property belonged to the same owner and the thefts were committed pursuant to a single intent and design or in execution of a single deceptive scheme; . . . .

[6] Wisconsin Stat. § 943.50(4)(bf) provides that "[w]hoever violates this section is guilty of: . . . A Class I felony, if the value of the merchandise exceeds $500 but does not exceed $5,000."

4

separately moved to dismiss the complaints, arguing that the State could only charge them with seven misdemeanors.

¶6 The circuit court held a hearing on both motions to dismiss. The circuit court granted both motions to dismiss without prejudice. It concluded that "theft" did not include retail theft, and the State could not aggregate retail thefts under Wis. Stat. § 971.36(3). The State appealed.

¶7 The court of appeals reversed. Lopez, 385 Wis. 2d 482, ¶15. It concluded that "the State has authority under § 971.36(3)(a) to charge the multiple alleged acts of retail theft as one continuous offense." Id., ¶5. Specifically, the court of appeals concluded that the statute "refers generally to 'theft,'" is not limited to theft under Wis. Stat. § 943.20, and applies to retail theft under Wis. Stat. § 943.50. Id., ¶12.

¶8 Lopez[7] filed a petition for review in this court. We granted the petition.

## II. STANDARD OF REVIEW

¶9 This case requires this court to interpret Wis. Stat. § 971.36 to determine whether the statutory term "theft"

---

[7] State v. Lopez and State v. Rodriguez, 2019 WI App 2, 385 Wis. 2d 482, 922 N.W.2d 855, were consolidated for appeal and remain so before this court. Although Rodriguez did not file a petition for review, she has informed this court that she wishes to join Lopez's arguments before this court. We need not determine whether she has complied with appellate procedure in so doing. Because these cases remain consolidated, she is bound by our determination in this case.

includes the charge of retail theft. "The interpretation and application of a statute present questions of law that this court reviews de novo while benefitting from the analyses of the court of appeals and circuit court." State v. Alger, 2015 WI 3, ¶21, 360 Wis. 2d 193, 858 N.W.2d 346 (citing State v. Ziegler, 2012 WI 73, ¶37, 342 Wis. 2d 256, 816 N.W.2d 238). Thus, we review de novo whether "theft" includes retail theft.

### III. ANALYSIS

### A. Statutory Interpretation

¶10 We begin our analysis with the language of the relevant statute, Wis. Stat. § 971.36. State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. The purpose of statutory interpretation is to give the statute "its full, proper, and intended effect." Id., ¶44. If the statutory language is plain, we end the inquiry and give the language its "common, ordinary, and accepted meaning, except [we give] technical or specially-defined words or phrases . . . their technical or special definitional meaning." Id., ¶45.

¶11 This court also analyzes the context and structure of a statute to determine its meaning. Statutory language "is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes . . . ." Id., ¶46. "A statute's purpose or scope may be readily apparent from its plain language or its relationship to surrounding or closely-

6

related statutes——that is, from its context or the structure of the statute as a coherent whole."  Id., ¶49.

¶12  If analyzing a statute's language in context "yields a plain, clear statutory meaning, then there is no ambiguity" and we end the inquiry.  Kalal, 271 Wis. 2d 633, ¶46 (quoting Bruno v. Milwaukee Cty., 2003 WI 28, ¶20, 260 Wis. 2d 633, 660 N.W.2d 656) (internal quotations omitted).  We conclude that the plain meaning of Wis. Stat. § 971.36 is unambiguous.  We base that conclusion on the language of the statute and confirm that conclusion using traditional tools of statutory construction.

### 1.  Wisconsin Statute § 971.36

¶13 Wisconsin Stat. § 971.36, which is found in the criminal procedure chapter of the statutes, is entitled "Theft; pleading and evidence; subsequent prosecutions."  It provides, in relevant part, as follows:

> (1) In any criminal pleading for theft, it is sufficient to charge that the defendant did steal the property (describing it) of the owner (naming the owner) of the value of (stating the value in money).
>
> . . .
>
> (3) In any case of theft involving more than one theft, all thefts may be prosecuted as a single crime if:
>
> (a) The property belonged to the same owner and the thefts were committed pursuant to a single intent and design or in execution of a single deceptive scheme; . . . .

¶14 Subsection (1) addresses how to properly draft a criminal pleading for theft.  Subsection (3) addresses the State's authority to charge multiple thefts as a single crime.

7

Put simply, the State may charge multiple thefts as one theft if they are all from the same owner and committed together with the same intent and design, or in the same scheme. Section 971.36 does not define "theft," but the word "theft" appears elsewhere in the Wisconsin Statutes.

## 2. Theft-related statutes

¶15 The word "theft" appears in ten criminal statute titles in Chapter 943 "Crimes Against Property." The chapter sets forth multiple criminal theft offenses. First is the general theft statute. Then the chapter sets forth other fact-specific theft offenses, one being retail theft. See Wis. Stat. §§ 943.20 ("Theft"); 943.205 ("Theft of trade secrets"); 943.45 ("Theft of telecommunications service"); 943.455 ("Theft of commercial mobile service"); 943.46 ("Theft of video service"); 943.47 ("Theft of satellite cable programming"); 943.50 ("Retail theft; theft of services"); 943.61 ("Theft of library material"); 943.74 ("Theft of farm-raised fish"); and 943.81 ("Theft from a financial institution").

¶16 Lopez argues that retail thefts under Wis. Stat. § 943.50 cannot be aggregated under Wis. Stat. § 971.36. A person commits retail theft under § 943.50 "if he or she [commits any mode of retail theft] without the merchant's consent and with intent to deprive the merchant permanently of possession or the full purchase price of the merchandise or property." § 943.50(1m). The eight modes of commission are: intentionally altering merchandise prices; intentionally taking and carrying away merchandise; intentionally transferring

8

merchandise; intentionally concealing merchandise; intentionally retaining possession of merchandise; intentionally removing theft detection devices from merchandise; using or possessing with intent to use a theft detection shielding device to shield merchandise; and using or possessing with intent to use a theft detection device remover to remove a theft detection device from merchandise. § 943.50(1m)(a)-(h).

¶17 Lopez argues that the only crimes that can be aggregated under Wis. Stat. § 971.36(3) are theft crimes under Wis. Stat. § 943.20.[8] Section 943.20 defines five modes of committing theft. They can be summarized as: theft of movable property; theft of money, negotiable security, instrument, paper, or negotiable writing by one in possession; theft of property from one with a superior interest; theft by fraud; and theft by failure to return property after expiration of a lease or rental agreement. § 943.20(1)(a)-(e). Thus, in Wisconsin, "theft" is used to describe a variety of theft crimes.

3. "Theft" includes retail theft under Wis. Stat. § 943.50.

¶18 Since the legislature has used "theft" to describe a variety of crimes, the parties in this case disagree on what the word "theft" in Wis. Stat. § 971.36 means. Lopez argues that "theft" includes only theft crimes under Wis. Stat. § 943.20, entitled "Theft." Specifically, she argues that: (1) "theft" is a term of art defined by its elements in § 943.20; (2) "theft"

---

[8] Section 943.20, while entitled "Theft," does not contain the word "theft" in the text of the statute.

9

in § 971.36 should be read narrowly because "any" modifies "case," and not "theft"; (3) other theft crimes have their own aggregation statutes, tending to show that the legislature did not intend retail theft to be aggregated; and (4) retail theft is different from "theft" because it requires proof that the owner was a merchant and the items were merchandise held for sale.

¶19 The State argues that "theft" is not limited to theft crimes under Wis. Stat. § 943.20, and includes retail theft under Wis. Stat. § 943.50. Specifically, the State argues that: (1) Wis. Stat. § 971.36 uses broad language and applies to "any case of theft"; (2) the legislature meant "theft" to include retail theft because the legislature designated it a theft crime; and (3) the legislature could have explicitly excluded retail theft from "theft" under § 971.36 by stating it applied only to § 943.20 or by drafting a separate aggregation statute for retail theft, but failed to do so. We agree with the State and conclude that "theft" under § 971.36 is not limited to theft under § 943.20.

¶20 To begin, Wis. Stat. § 971.36(3) applies "[i]n any case of theft involving more than one theft . . . ." § 971.36(3). The plain language of the statute makes clear that the legislature's plain meaning applies broadly, to "any case of theft involving more than one theft." Id. Lopez would have this court read the phrase "any case" in isolation. But that argument ignores the plain language of the statute. The plain

10

language of § 971.36(3) applies to "any case of theft involving more than one theft." Id. (emphasis added.)

¶21 Furthermore, there is no limiting language in the statute. The legislature could have written, "In any case of theft [under s. 943.20] involving more than one theft, all thefts may be prosecuted as a single crime . . . ." But it did not. In contrast, the legislature did include limiting language in the three aggregation statutes that follow § 971.36. See Wis. Stat. §§ 971.365(1)(a) ("In any case under s. 961.41(1)(em), 1999 stats., or s. 961.41(1)(cm), (d), (e), (f), (g) or (h) involving more than one violation, all violations may be prosecuted as a single crime . . . ."); 971.366 ("In any case under s. 943.201 or 943.203 involving more than one violation, all violations may be prosecuted as a single crime . . . ."); and 971.367 ("In any case under s. 946.79 involving more than one violation, all violations may be prosecuted as a single crime . . . ."). When the legislature does not include limiting language in a statute, we decline to read any into it. State v. Kozel, 2017 WI 3, ¶39, 373 Wis. 2d 1, 889 N.W.2d 423 ("'We will not read into the statute a limitation the plain language does not evidence.'") (quoting Cty. of Dane v. LIRC, 2009 WI 9, ¶33, 315 Wis. 2d 293, 759 N.W.2d 571). The legislature did not limit § 971.36(3) to theft under § 943.20. Thus, we decline to read Lopez's requested limitation into the statute.

¶22 Lopez argues that because retail theft does not have its own specific aggregation statute the legislature did not intend retail theft to be aggregated. See Wis. Stat. §§ 971.366

11

and 971.367 (aggregating other fact-specific theft offenses). We disagree. The fact that other aggregation statutes exist does not demonstrate that the legislature excluded retail theft from aggregation under Wis. Stat. § 971.36. Rather, the absence of any limiting language in § 971.36(3) shows that the legislature did not exclude retail theft from aggregation under that section. Contrary to Lopez's argument, the legislature endowed prosecutors with the authority to aggregate retail theft under § 971.36(3).

¶23 Lopez also argues that retail theft under Wis. Stat. § 943.50 does not qualify as "theft" under Wis. Stat. § 971.36 because it requires proof that the owner was a merchant and the items taken were merchandise held for sale. But even when a theft is of merchandise taken from a merchant, it nonetheless is a "theft." Thus, we find Lopez's argument unpersuasive.

¶24 We conclude that "theft" under Wis. Stat. § 971.36(3) includes retail theft under Wis. Stat. § 943.50. Thus, we conclude that the State may charge multiple retail thefts under § 943.50 as one continuous offense pursuant to § 971.36(3). This conclusion is based on the plain meaning of the statute. We confirm this plain meaning conclusion by looking at the context of the statute.

¶25 The parties argue that statute titles are permissive indicators of meaning in this case. Lopez argues titles matter because "Theft" is the title of Wis. Stat. § 943.20 (the only theft statute which predates Wis. Stat. § 971.36(3)) and "theft" is the word the legislature used in § 971.36(3). The State

12

argues that titles matter because "theft" is the word the legislature used in § 971.36(3) and the word "theft" appears in ten statute titles in Chapter 943. Statute titles are not dispositive. To the extent that we may consider statute titles as part of the context in which we interpret statutory meaning, here the titles provide further confirmation for our plain meaning analysis.

¶26 "Context is important to meaning." Kalal, 271 Wis. 2d 633, ¶46. In fact, a statute's "title and headings are permissible indicators of meaning." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 221 (2012); see also id. at 21-24 ("Title-and-Headings Canon"). This court has previously concluded that "reference to [a statute's] title is appropriate" in statutory interpretation. State v. Dorsey, 2018 WI 10, ¶30, 379 Wis. 2d 386, 906 N.W.2d 158. "The titles . . . of the statutes . . . are not part of the statutes." Wis. Stat. § 990.001(6). But the titles are part of a statute's context and can be relevant to statutory interpretation. See Dorsey, 379 Wis. 2d 386, ¶30; see also Aiello v. Vill. of Pleasant Prairie, 206 Wis. 2d 68, 73, 556 N.W.2d 697 (1996) ("Although titles are not part of statutes, . . . they may be helpful in interpretation.").

¶27 A statute's title is not part of the statute, but it is language approved by the legislature. The legislature adopts the statute's title. Scalia & Garner, supra ¶26, at 221. When the legislature adopts non-statutory language in titles, that

13

language has meaning and reflects a decision of the legislature. The United States Supreme Court has said:

> [The] heading is but a short-hand reference to the general subject matter involved . . . . [H]eadings and titles are not meant to take the place of the detailed provisions of the text. Nor are they necessarily designed to be a reference guide or a synopsis . . . . For interpretive purposes, they are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain.

Id. (quoting Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R., 331 U.S. 519, 528-29 (1947)).

¶28 And this court has said:

> Titles to sections of a statute are not part of the statute. Sec. 990.001(6), Stats. However, such titles may be resorted to in order to resolve a doubt as to statutory meaning. Federal Rubber Co. v. Industrial Comm., [185 Wis. 299, 301, 201 N.W. 261 (1924)]. However, the converse of the latter rule is also true that titles should not be resorted to in order to create a doubt where none would otherwise exist.

Wisconsin Valley Imp. Co. v. PSC, 9 Wis. 2d 606, 618, 101 N.W.2d 798 (1960). In short, a statute's title may not be used to contradict its text or to create ambiguity where its meaning is plain. But the title may be used to confirm a statute's meaning.

¶29 Although we do not rely on the relevant statutes' titles to interpret meaning here, we note that this court has previously relied on a statute's title as context to interpret its meaning. For example, in State v. Matasek, we concluded that the phrase "at the time of sentencing" in Wis. Stat.

14

§ 973.015 (2011-12) includes the disposition of probation.[9] 2014 WI 27, ¶¶34, 39, 353 Wis. 2d 601, 846 N.W.2d 811. In support of that conclusion, we stated, "The probation statute is part of chapter 973 of the statutes, which is entitled 'Sentencing.'" Id., ¶37 (emphasis added). The court did the same in Dorsey. In that case, we interpreted Wis. Stat. § 904.04(2)(b)(1). We concluded, "In the context of its title, 'Greater latitude,' we interpret subd. (2)(b)(1). as adopting the common law greater latitude rule to permit the admission of other, similar acts of domestic abuse with greater latitude." Dorsey, 379 Wis. 2d 386, ¶31 (emphasis added).[10]

---

[9] Probation is not a sentence. State v. Horn, 226 Wis. 2d 637, 647, 594 N.W.2d 772 (1999). But the disposition of probation occurs "at the time of sentencing." Wis. Stat. § 973.015.

[10] Furthermore, in Wisconsin we have come to know the names of certain crimes by the statute title rather than the elements outlined in the statute language. See State v. Davison, 2003 WI 89, 263 Wis. 2d 145, 666 N.W.2d 1 (referring to aggravated battery, not "caus[ing] substantial bodily harm to another by an act done with intent to cause bodily harm to that person . . . " contrary to Wis. Stat. § 940.19(2)); State v. Asboth, 2017 WI 76, 376 Wis. 2d 644, 898 N.W.2d 541 (referring to robbery, not "with the intent to steal, tak[ing] property from the person or presence of the owner" by "threatening the imminent use of force against the person of the owner" with a "dangerous weapon" contrary to Wis. Stat. § 943.32(1)(b), (2)); State v. Arberry, 2018 WI 7, 379 Wis. 2d 254, 905 N.W.2d 832 (referring to retail theft, not taking merchandise "without the merchant's consent and with intent to deprive the merchant permanently of possession or the full purchase price of the merchandise . . . " contrary to Wis. Stat. § 943.50(1m)).

15

¶30 In sum, statute titles historically have had significance in Wisconsin case law. Courts have indeed observed titles to confirm statutory interpretation or even to resolve an ambiguity. Titles may provide context. Thus, we conclude that we may here consult statute titles to confirm our interpretation of the plain meaning of the statutes at issue.

¶31 The plain language of Wis. Stat. § 971.36(3) refers to "theft" generally. That same word——"theft"——is found in the title of Wis. Stat. § 943.50, "Retail theft; theft of services." The "Retail theft" portion of the title provides context for and confirms our interpretation of the word "theft" in § 971.36(3). We conclude that the general reference to "theft" in § 971.36(3) includes retail theft under § 943.50. Thus, we conclude that the State may charge multiple retail thefts under § 943.50 as one continuous offense pursuant to § 971.36(3).[11]

¶32 The court of appeals concluded that the State properly exercised its Wis. Stat. § 971.36(3) authority in this case because the merchandise "belonged to the same owner," Wal-Mart, and "the thefts were committed pursuant to a single intent and

---

[11] The State argued, in the alternative, that it has discretionary authority to charge multiple retail thefts as one single felony. Because we conclude the State has statutory authority pursuant to Wis. Stat. § 971.36(3), we do not address whether it has discretionary authority. Lopez argued that the State does not have discretionary authority to charge multiple retail thefts as one single felony because the charge would be improperly duplicitous. Because we do not address the State's discretionary authority argument, and because we determine this case is properly aggregated under § 971.36, we need not address Lopez's duplicity argument.

16

design or in execution of a single deceptive scheme."  Wis. Stat. § 971.36(3)(a); <u>Lopez</u>, 385 Wis. 2d 482, ¶14.  We do not disturb that conclusion.

IV.  CONCLUSION

¶33  We conclude that "theft" under Wis. Stat. § 971.36 includes retail theft under Wis. Stat. § 943.50.  We therefore conclude that the State has authority to charge multiple retail thefts under § 943.50 as one continuous offense pursuant to § 971.36(3).  Thus, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶34 REBECCA GRASSL BRADLEY, J. *(concurring).* I join the mandate of the lead opinion[1] affirming the decision of the court of appeals. I agree that under a plain meaning analysis, the word "theft" used in Wis. Stat. § 971.36(3) includes retail theft; therefore, the State can aggregate the seven instances of retail thefts into one charge. I cannot, however, join the lead opinion's analysis because it improperly relies on sources beyond the unambiguous text of the statute we interpret.[2]

¶35 As a preliminary matter, the lead opinion should have more thoroughly explained why Amy J. Rodriguez, who did not participate in the appeal before this court, nevertheless appears in the caption. The State brought criminal complaints against Autumn Marie Love Lopez and Rodriguez separately in the circuit court. Both women filed separate motions to dismiss, which the circuit court granted. Both women appealed to the court of appeals, at which point the State filed a motion asking the court of appeals to consolidate the two cases for purposes of briefing and disposition. The court of appeals granted the

---

[1] I refer to Justice Ziegler's opinion as the "lead opinion" because Section III.G.4. of the court's internal operating procedures provides that "[i]f . . . the opinion originally circulated as the majority opinion does not garner the vote of a majority of the court, it shall be referred to in separate writings as the 'lead opinion' unless a separate writing garners the vote of a majority of the court."

[2] Although the lead opinion correctly concludes that "theft" under Wis. Stat. § 971.36(3) includes retail theft, the lead opinion's reliance on statutory titles to inform its analysis of the text permeates the lead opinion's reasoning to the extent that I cannot join the opinion.

State's motion. As a result, the captions from Lopez's and Rodriguez's cases were joined into one consolidated caption.

¶36 Only Lopez filed a petition for review of the court of appeals decision. Rodriguez declined to ask this court to review the decision of the court of appeals adverse to her. Rodriguez never filed a petition for review nor did she file a letter saying she joins the petition for review filed by Lopez.

¶37 Although Attorney Tristan Breedlove represented Lopez in the court of appeals, Attorneys Susan Alesia and Kelsey Loshaw represent Lopez before this court. On June 10, 2019, Attorneys Alesia and Loshaw filed the first brief on behalf of Petitioner Lopez. On June 28, 2019, the State filed its response brief.[3] On July 10, 2019, Rodriguez's attorney filed a letter stating:

> I must correct my previous letter from today. I represent Defendant-Respondent Amy J. Rodriguez. The State has filed its brief. I expect that Defendant-Respondent-Petitioner Autumn Marie Love Lopez, by <u>Attorney Tristan Breedlove</u>, <u>will be filing</u> a <u>response</u> brief setting forth the same positions she presented to the court of appeals. I expect the issues to be discussed in <u>Attorney Breedlove's brief</u> will be identical to the issues existing in my client's case. <u>I do not intend to file a brief on my client's behalf</u> <u>and do not intend to participate in oral argument. My</u> <u>client will be joining Attorney Breedlove in her</u> <u>argument</u>.

(Emphasis added.) Rodriguez's attorney's letter includes some factual errors, both with respect to who represents Lopez (Breedlove was no longer Lopez's lawyer; Attorneys Alesia and

---

[3] The State's brief erroneously lists both Lopez and Rodriguez as petitioners. As noted, only Lopez is a petitioner.

Loshaw were) and with regard to which briefs had been filed (Lopez filed the first brief and the State filed the response). Further, Rodriguez's attorney told the court he would not be filing a brief on his client's behalf or giving oral argument, but Rodriguez would join "Breedlove in her argument." Clearly, Rodriguez could not have filed a brief in this court or participated in oral argument because she was not a petitioner.[4] Moreover, Breedlove did not make any argument in this court so Rodriguez could not "join" Breedlove's argument.

¶38 Although the lead opinion acknowledges that Rodriguez did not file a petition seeking review in this court, it nevertheless notes that Rodriguez "join[s]" Lopez's arguments before us. See lead op., ¶8 n.7. Because Rodriguez never filed a petition for review, Rodriguez could not participate in this matter at all without requesting leave of the court to do so.[5] Instead of allowing a non-party to skirt the rules of appellate procedure and "join" the petitioner's argument, the lead opinion instead should have indicated that, having elected not to file her own petition, Rodriguez is bound by the court's decision with respect to Lopez's petition. By allowing a non-party to "join" a petitioner's "argument," the lead opinion suggests the rules of appellate procedure need not be followed.

---

[4] Rodriguez's caption remained consolidated with Lopez's because once the cases are consolidated on appeal, the captions remain together unless a court orders otherwise.

[5] See Wis. Stat. § 809.62(1r) providing the rules governing the petition for review process and declaring that "Supreme court review is a matter of judicial discretion, not of right[.]"

¶39 As far as the reasoning underlying the court's decision, the lead opinion should have relied solely on the statutory text instead of attempting to divine legislative "intent" or elevating the importance of statutory titles in ascertaining the meaning of a law. Despite its conclusion that the plain text of the statute is unambiguous, the lead opinion nevertheless agrees with the State's argument that "the legislature meant 'theft' to include retail theft" and says "the legislature's plain meaning applies broadly." Lead op., ¶¶19-20. An interpretation based on what the legislature intended a statute to mean is improper. "'[W]e do not inquire what the legislature meant; we ask only what the statute means.'" State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶39, 271 Wis. 2d 633, 681 N.W.2d 110 (quoted source omitted). Courts disregard what the legislature may have "intended" when it passed a law and instead ascertain the meaning of the words the legislature actually enacted because "[i]t is the enacted law, not the unenacted intent, that is binding on the public." Id., ¶44; see also Winebow, Inc. v. Capitol-Husting Co., 2018 WI 60, ¶40, 381 Wis. 2d 732, 914 N.W.2d 631 (Rebecca Grassl Bradley, J., dissenting) ("[L]egislative intent behind enactment of a law . . . cannot govern statutory interpretation. Rather, our analysis must focus on the statutory language itself[.]"); State v. Grandberry, 2018 WI 29, ¶55, 380 Wis. 2d 541, 910 N.W.2d 214 (Kelly, J., concurring) ("[W]e give effect only to what the legislature does, not what it tried to do."). The legislature's intent should play no role in the court's analysis; we analyze

4

the text of the statute in ascertaining its meaning. See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts, 391-396 (2012) ("[C]ollective intent is pure fiction because dozens if not hundreds of legislators have their own subjective views on the minutiae of bills they are voting on[.]"); see also Robert E. Keeton, Keeton on Judging in the American Legal System 210-11 (Lexis Pub. 1999) ("'[L]egislative intent' . . . is a legal fiction. Only a natural person can have a state of mind such as intent. No legal entity such as a legislature can have an 'intent' in a strictly factual sense.").

¶40 The lead opinion acknowledges that if the statutory language is plain and unambiguous, we end our inquiry into its meaning. Lead op., ¶¶10, 12. The lead opinion correctly concludes that the plain meaning of Wis. Stat. § 971.36 is unambiguous. Lead op., ¶12. The lead opinion should have stopped there. Instead, the lead opinion devotes nearly half of its analysis to a discussion of statutory titles, lending unwarranted significance to their role in statutory interpretation.

¶41 Titles are not part of the statute's text. The legislature itself says so in Wis. Stat. § 990.001(6): "The titles to subchapters, sections, paragraphs and subdivisions of the statutes and history notes are not part of the statutes." While titles have been employed as "permissible indicators of

5

meaning"[6] we have for over half-a-century limited their use to resolving doubt or ambiguity in the text. Wisconsin Valley Improvement Co. v. Public Serv. Comm'n, 9 Wis. 2d 606, 618, 101 N.W.2d 798 (1960) ("[T]itles may be resorted to in order to resolve a doubt as to statutory meaning."); Pulsfus Poultry Farms, Inc. v. Town of Leeds, 149 Wis. 2d 797, 806, 440 N.W.2d 329 (1989) ("Titles may be used to resolve doubts as to ambiguous statutory meaning even though they are not part of the law."); State v. Black, 188 Wis. 2d 639, 645, 526 N.W.2d 132 (1994) ("In the face of such plain and unambiguous language we must disregard the title of the statute. Consideration of a statutory title may be used only to resolve doubt as to the meaning of the statute.") (internal citation omitted).

¶42 The lead opinion recites these longstanding principles, but does not apply them. The lead opinion explicitly holds the applicable statute in this case is plain and not ambiguous. Nevertheless, the lead opinion relies heavily on statutory titles in order to support its conclusion. Doing so weakens it by suggesting the text itself is not enough to answer the question presented.

¶43 The danger of employing statutory titles as part of the court's reasoning is not trivial. Employing such tools in a manner contrary to fundamental rules of textual interpretation risks "undo[ing] or limit[ing] that which the text makes plain." Scalia & Garner, Reading Law at 221 (quoting Brotherhood of R.R.

---

[6] Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts, 221 (2012).

6

Trainmen v. Baltimore & Ohio R.R. Co., 331 U.S. 519, 528-29 (1947)). For example, in State v. Dorsey,[7] the lead opinion misused a statutory title to read in "evidentiary preconditions wholly absent from the text." Id., 379 Wis. 2d 386, ¶73 (Rebecca Grassl Bradley, J., concurring). Although in this case the lead opinion does not use statutory titles to read something into the statutory text, its extensive and unnecessary reliance on titles in its reasoning signals a willingness to bend if not altogether rewrite longstanding principles of statutory interpretation. The lead opinion seems to give titles the same interpretive significance as the text, which flies in the face of the cardinal rule that the "text must control over title." Aiello v. Vill. of Pleasant Prairie, 206 Wis. 2d 68, 73, 556 N.W.2d 697 (1996).

¶44 The lead opinion could have applied Wisconsin cases that recognize titles as nothing more than "tools available for the resolution of a doubt" and confine their use to "shed light on some ambiguous word or phrase."[8] Doing so would have ended

---

[7] 2018 WI 10, 379 Wis. 2d 386, 906 N.W.2d 158.

[8] Scalia & Garner, Reading Law at 221 (quoting Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co., 331 U.S. 519, 528-29 (1947)). Notably, and unlike Wisconsin, the United States Code contains no provision expressly excluding titles from the statutes, which explains federal courts' reliance on titles to ascertain statutory meaning in the presence of ambiguity. Recognizing that many state legislatures address titles differently, the authors of Reading Law advise the interpreter to check the statutes for the legislature's directives regarding the use of titles. Scalia & Garner, Reading Law at 224. Given the Wisconsin legislature's declaration that titles "are not part of the statutes," titles should not be used even to resolve an ambiguity. Wis. Stat. § 990.001(6).

the analysis after construing the plain meaning of the statute without resort to sources extraneous to the text.  Because the lead opinion did not apply the unadulterated canons of statutory interpretation or the legislature's directive that titles are not part of the statutes, I respectfully concur.

¶45  I am authorized to state that Justice DANIEL KELLY joins this concurrence except for footnote 2 and the statement in ¶34 that I do not join the lead opinion.

8

¶46 DANIEL KELLY, J. *(concurring).* I join the majority opinion except for ¶¶25-31; I also join Justice Rebecca Grassl Bradley's concurrence except for footnote 2 and her statement that she does not join the lead opinion in ¶34.

¶47 ANN WALSH BRADLEY, J. *(dissenting).* When the legislature writes the word "theft" in a statute, it means theft and only theft. It does not mean "theft of trade secrets,"[1] "theft of farm-raised fish"[2] or "retail theft."[3]

¶48 We presume that the legislature chooses its statutory language "carefully and precisely" to express its desired meaning. Industry to Indus., Inc. v. Hillsman Modular Molding, Inc., 2002 WI 51, ¶19 n.5, 252 Wis. 2d 544, 644 N.W.2d 236. "Theft" is a word with a precise meaning set forth in the statutes.[4]

¶49 Yet the majority/lead opinion[5] ignores the precise meaning the legislature has afforded the term and instead

---

[1] See Wis. Stat. § 943.205.

[2] See Wis. Stat. § 943.74.

[3] See Wis. Stat. § 943.50.

[4] See Wis. Stat. § 943.20.

[5] Justice Ziegler's opinion observes that Justice Kelly joins the opinion "except paragraphs 25 through 31." Majority/lead op., ¶3 n.3. Thus, I refer to Justice Ziegler's opinion as the "majority/lead" opinion throughout this dissent because the opinion in its entirety is not joined by a majority of the court. The opinion is a "majority" except with respect to paragraphs 25 through 31, which discuss the use of statutory titles in interpreting a statute. These paragraphs represent the rationale of only three justices and thus constitute a lead opinion.

The only reference to "lead opinions" in our Internal Operating Procedures (IOPs) states that if during the process of circulating and revising opinions, "the opinion originally circulated as the majority opinion does not garner the vote of a majority of the court, it shall be referred to in separate writings as the 'lead opinion' unless a separate writing garners the vote of a majority of the court." IOP III.G.4.

(continued)

1

broadly stretches its application. The majority/lead opinion's interpretation of the theft aggregation statute, Wis. Stat. § 971.36, employs a heretofore unrecognized "plain meaning" analysis which belies the plain text of the statute, the larger statutory context, and the statute's history.

¶50 Accordingly, I respectfully dissent.

I

¶51 This case arises from charges filed against Autumn Marie Love Lopez and Amy Rodriguez related to a string of seven retail thefts that took place over a period of a little over two weeks in January of 2017. Majority/lead op., ¶4. The State alleges that Lopez, a Wal-Mart employee, would pretend to assist Rodriguez at a self-check-out register, but would not actually properly scan merchandise. Id. Rodriguez was then able to walk out with the stolen merchandise. Id.

¶52 The value of the merchandise taken using this method ranged from $126.33 to $313.95 per occurrence, and the value of everything taken was $1,452.12 in total. Id. Rather than charging Lopez and Rodriguez with seven separate class A misdemeanor retail theft counts, the State sought to charge each

---

For further discussion of our procedure regarding lead opinions, see Koss Corp. v. Park Bank, 2019 WI 7, ¶76 n.1, 385 Wis. 2d 261, 922 N.W.2d 20 (Ann Walsh Bradley, J., concurring). See also two prior certifications from the court of appeals that have asked us to reexamine our lead opinion procedure. State v. Dowe, 120 Wis. 2d 192, 192-93, 352 N.W.2d 660 (1984) (per curiam); State v. Hawley, No. 2015AP1113-CR, unpublished certification, 2-3 (Nov. 21, 2018); see also State v. Lynch, 2016 WI 66, ¶145, 371 Wis. 2d 1, 885 N.W.2d 89 (Abrahamson and Ann Walsh Bradley, JJ., concurring in part, dissenting in part).

of them with a single class I felony count. Id., ¶5; see Wis. Stat. § 943.50(4)(a) & (bf) (providing that one who commits retail theft is guilty of a class A misdemeanor if the value of the merchandise does not exceed $500 and a class I felony if the value of the merchandise exceeds $500 but does not exceed $5,000).

¶53 Making no distinction between the crimes of theft and retail theft, the State cited Wis. Stat. § 971.36(3)(a) as authority for an aggregation of retail theft charges. The statute provides that "[i]n any case of theft involving more than one theft, all thefts may be prosecuted as a single crime if . . . [t]he property belonged to the same owner and the thefts were committed pursuant to a single intent and design or in execution of a single deceptive scheme . . . ." Lopez and Rodriguez moved to dismiss the complaints against them, arguing that "theft" as used in § 971.36 does not encompass retail theft.

¶54 Agreeing with Lopez and Rodriguez, the circuit court dismissed the charges without prejudice. On appeal, the court of appeals reversed. Purporting to engage in a "plain meaning" analysis, a majority of this court[6] now affirms the court of appeals, transforming misdemeanor charges into a felony.

---

[6] Justice Ziegler's majority/lead opinion and Justice Rebecca Grassl Bradley's concurrence both ultimately approve of the aggregation of charges in this case. Although in this dissent I largely address the majority/lead opinion, the concurrence likewise does not base its conclusion on the particular meaning of "theft" set forth in Wis. Stat. § 943.20.

II

¶55 The majority/lead opinion correctly identifies this case as presenting an issue of statutory interpretation. However, its analysis quickly goes astray. The issue before the court is discrete——whether "theft" as utilized in Wis. Stat. § 971.36(3)(a) includes the crime of "retail theft." The majority/lead opinion responds in the affirmative, applying a heretofore unrecognized plain meaning analysis that belies the theft aggregation statute's plain language.

¶56 As noted, Wis. Stat. § 971.36(3)(a), the theft aggregation statute, provides: "[i]n any case of theft involving more than one theft, all thefts may be prosecuted as a single crime if . . . [t]he property belonged to the same owner and the thefts were committed pursuant to a single intent and design or in execution of a single deceptive scheme . . . ."

¶57 The majority/lead opinion purports to apply our established statutory interpretation methodology. Its analysis and conclusion rely heavily on the use of statutory titles. Indeed, a substantial part of the analysis is spent justifying its use of statutory titles as part of a plain meaning analysis——but to no avail. See majority/lead op., ¶¶25-30.

¶58 Although the majority/lead opinion declares over and over again that it is engaging in a "plain meaning" analysis, it apparently fails to recognize that under the established statutory interpretation methodology, it cannot do what it purports to do.

4

¶59 The legislature has clearly declared that a title is not part of a statute. Wis. Stat. § 990.001(6). The title of a statute can never be used to establish a statute's plain meaning. Rather, once ambiguity is found, reference to a statute's title is permissible to relieve ambiguity. State v. Dorsey, 2018 WI 10, ¶30, 379 Wis. 2d 386, 906 N.W.2d 158.

¶60 Nevertheless, the majority/lead opinion asserts that titles are part of a statutory plain meaning analysis because "titles are part of a statute's context . . . ." Majority/lead op., ¶26. We have previously described a statute's context as "including the language and structure of surrounding or closely related statutes . . . ." Bostco LLC v. Milwaukee Metro. Sewerage Dist., 2013 WI 78, ¶46, 350 Wis. 2d 554, 835 N.W.2d 160 (citations omitted).

¶61 The majority/lead opinion's contention that something that is not part of the statutes can now be included when examining a statute's context is both novel and unsupportable. Resting upon such a faulty foundation, the majority/lead opinion's analysis cannot be sustained.

¶62 In short, the majority/lead opinion's use of title as part of a plain meaning statutory analysis finds no mooring in the law. The very cases cited by the majority/lead opinion as authority supporting such a premise, upon closer examination, either are distinguishable or actually undermine the premise. See, e.g., Dorsey, 379 Wis. 2d 386, ¶30 (explaining that a statutory title is a permissible indicator of meaning when resolving ambiguity); Wisconsin Valley Imp. Co. v. Pub. Serv.

Comm'n, 9 Wis. 2d 606, 618, 101 N.W.2d 798 (1960) (same). For a more extensive discussion of this fundamental flaw in the majority/lead opinion's analysis, see Justice Rebecca Grassl Bradley's concurrence, ¶¶40-42.

¶63 With the above discussion of the majority/lead opinion's analytical infirmities out of the way, I turn to what actually is the established statutory interpretation methodology. Our interpretation of a statute should begin with the language itself. State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning of the statute is plain, we need not inquire further. Id. We are to give statutory language its "common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id.

¶64 Consistent with Kalal, Wis. Stat. § 990.01(1) provides that "[a]ll words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning." Although Wis. Stat. § 971.36 does not define "theft," a "peculiar meaning in the law" is not far away. Namely, Wis. Stat. § 943.20 prohibits the crime of "theft," setting forth five different modes of commission for theft.[7] Accordingly, pursuant to § 990.01(1),

---

[7] Wisconsin Stat. § 943.20(1) provides:

(1) Acts. Whoever does any of the following may be penalized as provided in sub. (3):

(continued)

6

(a) Intentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without the other's consent and with intent to deprive the owner permanently of possession of such property.

(b) By virtue of his or her office, business or employment, or as trustee or bailee, having possession or custody of money or of a negotiable security, instrument, paper or other negotiable writing of another, intentionally uses, transfers, conceals, or retains possession of such money, security, instrument, paper or writing without the owner's consent, contrary to his or her authority, and with intent to convert to his or her own use or to the use of any other person except the owner. A refusal to deliver any money or a negotiable security, instrument, paper or other negotiable writing, which is in his or her possession or custody by virtue of his or her office, business or employment, or as trustee or bailee, upon demand of the person entitled to receive it, or as required by law, is prima facie evidence of an intent to convert to his or her own use within the meaning of this paragraph.

(c) Having a legal interest in movable property, intentionally and without consent, takes such property out of the possession of a pledgee or other person having a superior right of possession, with intent thereby to deprive the pledgee or other person permanently of the possession of such property.

(d) Obtains title to property of another person by intentionally deceiving the person with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made. "False representation" includes a promise made with intent not to perform it if it is a part of a false and fraudulent scheme.

(e) Intentionally fails to return any personal property which is in his or her possession or under his or her control by virtue of a written lease or written rental agreement after the lease or rental agreement has expired. This paragraph does not apply to a person who returns personal property, except a motor vehicle, which is in his or her possession or

(continued)

7

when the legislature refers to "theft" it refers to the particular meaning set forth by the elements of § 943.20. There is no other meaning of "theft" in our statutes for us to apply.[8]

¶65 Further, the statute's syntax supports the view that "theft" in Wis. Stat. § 971.36(3) is limited to "theft" and does not encompass "retail theft." To explain, § 971.36(3) applies "[i]n any case of theft" (emphasis added). "Any" modifies "case," not "theft." If the statute were written to apply "in a case of any theft" the result may be different. However, this is not the language the legislature chose.

¶66 This narrow interpretation of "theft" is consistent with the larger statutory context in which the theft aggregation statute lies. Several other aggregation provisions are very near to Wis. Stat. § 971.36, and each of these statutes specifically, by statute number, states the crimes to which it applies. See Wis. Stat. §§ 971.366 ("In any case under s. 943.201 or 943.203 involving more than one violation . . . ")

---

under his or her control by virtue of a written lease or written rental agreement, within 10 days after the lease or rental agreement expires.

[8] See Wis JI——Criminal 1441 (theft——Wis. Stat. § 943.20(1)(a)), 1444 (theft by employee, trustee, or bailee (embezzlement)——§ 943.20(1)(b)), 1450 (theft by one having an undisputed interest in property from one having superior right of possession——§ 943.20(1)(c)), 1453A (theft by fraud: representations made to the owner, directly or by a third person——§ 943.20(1)(d)), 1453B (theft by fraud: representations made to an agent——§ 943.20(1)(d)), 1453C (theft by fraud: failure to disclose as a representation——§ 943.20(1)(d)), 1455 (theft by failure to return leased or rented property—— § 943.20(1)(e)) (2019).

8

(emphasis added), 971.367 ("In any case under 946.79 involving more than one violation . . . ") (emphasis added).

¶67 Had the legislature wanted Wis. Stat. § 971.36(3) to apply to retail theft under Wis. Stat. § 943.50, it certainly could have said so. These other aggregation statutes demonstrate that the legislature knew how to specifically delineate the application of an aggregation statute, yet chose not to in this instance. Instead, it used the word "theft," a word with a "peculiar meaning in the law."

¶68 Viewing the majority/lead opinion in conjunction with the other aggregation statutes raises more questions than it answers with regard to the breadth of the majority/lead opinion's determination.

¶69 Is the majority/lead opinion concluding that Wis. Stat. § 971.36(3) applies to all "theft offenses?" See majority/lead op., ¶15. Are "theft offenses" those that have the word "theft" in their titles only? See id., ¶¶25-30. What about, for example, the crimes of unauthorized use of an individual's personal identifying information or documents under Wis. Stat. § 943.201 and unauthorized use of an entity's identifying information or documents under Wis. Stat. § 943.203? Courts have referred to such charges as "identity theft." See State v. Stewart, 2018 WI App 41, ¶26, 383 Wis. 2d 546, 916 N.W.2d 188.

¶70 The majority/lead opinion creates confusion regarding the application of aggregation statutes to these crimes. Each has its own specific aggregation provision. See Wis. Stat.

9

§ 971.366. Yet, the majority/lead opinion is unclear as to whether its holding extends to "identity theft" charges.

¶71 Further, the history of the theft aggregation statute indicates that its provisions were intended to apply to Wis. Stat. § 943.20 only. The modern versions of both the theft and theft aggregation statutes were enacted in 1955. Wis. Stat. § 943.20 (1955-56); Wis. Stat. § 955.31 (1955-56); see L. 1955, c. 696.[9] At this time, § 943.20 was the only theft-titled statute. All other "fact-specific theft offenses" cited by the majority/lead opinion came later.[10] See majority/lead op., ¶15. Consequently, "any case of theft" under the theft aggregation statute clearly referred to only § 943.20 at the time of the statute's passage.

---

[9] Wisconsin Stat. § 955.31 was renumbered to Wis. Stat. § 971.36 in 1969. The substance of the statute did not change. L. 1969, c. 255, § 63.

[10] Wisconsin Stat. § 943.45 ("Theft of telecommunications service," originally entitled "obtaining telecommunications service by fraud") was enacted in 1961. L. 1961, c. 248. Section 943.205 ("Theft of trade secrets") was enacted in 1965. L. 1965, c. 438. Section 943.50 (originally entitled "shoplifting," now "retail theft; theft of services") was enacted in 1969. L. 1969, c. 254. Wisconsin Stat. § 943.61 ("Theft of library material") was enacted in 1979 as Wis. Stat. § 943.60. L. 1979, c. 245, § 4. Both Wis. Stat. § 943.46 (currently entitled "Theft of video service") and Wis. Stat. § 943.47, ("Theft of satellite cable programming") were enacted in 1987. 1987 Wis. Act 345, §§ 2-3. Wisconsin Stat. § 943.455 (currently entitled "Theft of commercial mobile service," originally entitled "Theft of cellular telephone service") was enacted in 1991. 1991 Wis. Act 39, § 3619m. Section 943.74 ("Theft of farm-raised fish") was enacted in 2001. 2001 Wis. Act 91, § 3. Lastly, Wis. Stat. § 943.81 ("Theft from a financial institution") was enacted in 2005. 2005 Wis. Act 212, § 8.

¶72 It should be observed that under the majority/lead opinion's argument, retail theft charges could not have been aggregated under Wis. Stat. § 971.36 at the time the retail theft statute was enacted. Wisconsin Stat. § 943.50 was originally titled "shoplifting," and not "retail theft." See Wis. Stat. § 943.50 (1969-70).[11] The majority/lead opinion's reliance on the statutory title would thus have provided no support for the proposition that § 943.50 denominates a "theft" offense. See majority/lead op., ¶31. "Shoplifting" is not the crime of "theft," just as "retail theft" is not "theft."

¶73 In sum, the majority/lead opinion's interpretation of the theft aggregation statute rests upon an unsupportable plain meaning analysis, which runs counter to established principles of statutory interpretation. It betrays the statute's text, the statute's context, and the statutory history.

¶74 For the reasons set forth above, I respectfully dissent.

¶75 I am authorized to state that Justice REBECCA FRANK DALLET joins this dissent.

---

[11] See L. 1981, c. 270, § 2 (amending title of § 943.50 from "Shoplifting" to "Retail theft").

11